23CA1146 Interest of Colburn 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1146 Jefferson County District Court No. 22PR30393 Honorable Ryan P. Loewer, Magistrate In the Interest of William B. Colburn, Protected Person. William B. Colburn, Appellant, v. Kennedy Naquin, as the Community Executive Director for Peak Medical Colorado No. 3, Inc. d/b/a Bear Creek Center, Appellee. ORDER AFFIRMED Division V Opinion by JUDGE GRAHAM* Harris and Lum, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 The Law Office of Erick K. Hohenegger, LLC, Erick Hohenegger, Golden, Colorado, for Appellant Stotler Hayes Group, LLC, Andrew Hawes, Pawleys Island, South Carolina, for Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023
 1 ¶ 1 Respondent, William B. Colburn, appeals a magistrate’s finding that he is an incapacitated person under section 15-14-
102(5), C.R.S. 2023. We affirm. I. Background ¶ 2 In April 2021, Colburn was admitted to a licensed skilled nursing facility in Morrison, Colorado. Upon admission, Colburn was diagnosed with, among other things, alcohol-induced persistent dementia, severe malnutrition, hallucinations, delusions, and paranoid beliefs. ¶ 3 Given Colburn’s diagnoses, in March 2022, the facility filed petitions for appointment of a guardian and conservator. Attached to the petition was a signed declaration from Colburn’s treating physician, Dr. Leslie Eber. Dr. Eber provided Colburn treatment for, among other things, alcohol-induced persistent dementia, severe protein calorie malnutrition, and vascular disease. Dr. Eber stated that in her professional opinion, Colburn’s “physical and specifically mental conditions render him incapacitated.” ¶ 4 In August, the court appointed a court visitor. After interviewing Colburn, facility staff, and Colburn’s family, the court visitor filed a report recommending the appointment of a guardian 
 2 and conservator for Colburn based on the fact that he needed help with “all mental aspects of daily living” and lacked “the ability to understand, comprehend, control, access . . . or otherwise manage his income, resources and finances.” ¶ 5 Colburn’s court-appointed counsel then requested an independent neuropsychological evaluation, which the court granted. Counsel selected Dr. John Dicke to perform the independent evaluation. After completing his evaluation, Dr. Dicke issued a report which diagnosed Colburn with psychotic delusional disorder and narcissistic personality disorder. In his opinion, Colburn’s conditions made him “grossly out of reality” and made “it impossible for him to make good and reasonable decisions about himself and his care now or in the future.” As a result, Dr. Dicke recommended that Colburn needed a guardian because “he lack[ed] capacity by clear and convincing evidence,” to care for himself. ¶ 6 In May 2023, the court held a hearing on both the guardianship and conservatorship petitions. The parties agreed to admit both the court visitor report and the independent neuropsychological evaluation. The court additionally heard 
 3 testimony from the facility’s director of nursing, the facility’s business office manager, Colburn’s roommate, and Colburn himself. ¶ 7 After hearing all the evidence, the court made oral and written findings and granted the request for conservatorship and guardianship. II. Guardianship ¶ 8 Colburn contends that there was insufficient evidence for the magistrate to find that he was an incapacitated person, as required for appointment of a guardian.
1 We reject this contention and conclude that there is sufficient evidence in the record to support the magistrate’s findings. A. Applicable Law and Standard of Review ¶ 9 Appointment of a guardian is governed by section 15-14-311, C.R.S. 2023. As relevant here, “[t]he court may: [a]ppoint a limited or unlimited guardian for a respondent only if it finds by clear and convincing evidence that: (I) [t]he respondent is an incapacitated person; and (II) [t]he respondent’s identified needs cannot be met by less restrictive means, including use of appropriate and reasonably 1 Colburn does not challenge the appointment of a conservator. 
 4 available technological assistance.” § 15-14-311(1)(a)(I)-(II).
2 Section 15-14-102(5) defines an incapacitated person as follows: [A]n individual other than a minor, who is unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance. ¶ 10 “It is the responsibility of the trier of fact to determine the credibility of the witnesses, the weight, probative effect and sufficiency of the evidence.” Neher v. Neher, 2015 COA 103, ¶ 54 (quoting Wright Farms, Inc. v. Weninger, 669 P.2d 1054, 1056 (Colo. App. 1983)). Thus, on appeals of rulings under Title 15, “the factual findings of the trial court sitting without a jury are not to be disturbed unless clearly erroneous and not supported by the record.” Id. (quoting In re Marriage of Hoffman, 650 P.2d 1344, 1345 (Colo. App. 1982)). 2 Colburn only challenges the magistrate’s finding under section 15-
14-311(1)(a)(I), C.R.S. 2023 — that he is an incapacitated person. 
 5 B. Analysis ¶ 11 The court had the following evidence before it regarding guardianship: • The director of nursing testified that if Colburn were to leave the facility, he would still need assistance managing medications and financial decisions. • The director of nursing testified that Colburn was unable to communicate a safe discharge plan for himself once he finished his rehabilitation. • The business manager testified that Colburn was unable to handle or discuss his financial situation and owed the facility $139,260. • The business manager testified that Colburn lacked “executive functioning to manage a household or pay his bills.” • Both of Colburn’s sons stated that it was in Colburn’s best interest to have a guardian. • The court visitor report noted that Colburn needed “help with medications and nutrition” and “all mental aspects of daily living.” 
 6 • The neuropsychologist evaluation expressed concerns that Colburn owned twenty-two firearms and that he said the “guns would never be taken from him while he was alive.” • The neuropsychologist evaluation concluded that Colburn’s “delusional system rises to the level of a psychosis rife with conspiracies, paranoia and plots against him” and that as a result, he is “unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that he lacks the ability to satisfy essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance.” ¶ 12 In contrast to the above evidence, Colburn presented evidence that he is cognitively intact, leaves and returns to the facility at will, is not aggressive or physically violent, and is “100 percent” capable of performing his daily life activities. 
 7 ¶ 13 After hearing all the evidence, the court found that Colburn was incapacitated. The court made the following findings in its oral ruling: [T]he Court has seen [manifested in the hearing * * *] the Narcissistic Personality Disorder. It is less concerning [than] the Delusional Disorder to the Court. But it is, as Dr. Dicke writes, grandiose sense of importance and achievement. Lack of empathy and self awareness. Sense of entitlement. Believing he and his forebears built this country. And therefore, he is special. And he is having the life sucked out of him by outsiders, liberals and administrators. . . . Essentially, everyone else that has been referred to by Mr. Colburn is incompetent and is taking advantage of him. And while the Court is quite frankly impressed by Mr. Colburn and his history and what he has accomplished — and I say that sincerely, Mr. Colburn — we’re at a point right now where there is a level of assistance that is necessary. . . . Mr. Colburn is unable to manage property and business affairs because of an inability to effectively receive and evaluate information, and to make — and communicate his decisions, even with the use of appropriate and reasonably available technological assistance. 
 8 This is because of the Delusional Disorder and the impasse that Mr. Colburn has created in light of the Narcissistic Personality Disorder. . . . I have to look at 15-14-102, Subsection 5, which gives us all the definition of incapacitated person. I’m going to take the time to read that. It means an individual other than a minor, who is unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for, as Dr. Dicke addressed these three things as well. For physical health, safety or self care even with appropriate and reasonably available technological assistance. The Court has great concern [about] Mr. Colburn’s lack of appreciation of his continued ownership of firearms. While much of what Dr. Dicke concludes as the basis of his expert opinion are not facts that the Court can just readily adopt, I do recognize statements attributed to Mr. Colburn, which are statements against interest, which the Court does adopt. And that is that Mr. Colburn continues to have firearms. And that he is — will not readily relinquish those. The Court finds that by clear and convincing evidence, Mr. Colburn is an incapacitated person. And that his needs cannot be met by less restrictive means. That does not mean to say that an assisted living facility is not appropriate and that he requires skilled nursing. That is not the standard here. It will 
 9 be for the Guardian’s — part of the Guardian’s charge to make that determination. The Court finds that as [an] incapacitated person, Mr. Colburn’s needs cannot be met by less restrictive means, including the use of appropriate and reasonably available technological assistance. ¶ 14 We conclude that this evidence is sufficient to show that Colburn was unable to “effectively receive or evaluate information or both or make or communicate decisions to such an extent” that he “lack[ed] the ability to satisfy essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance.” § 15-14-102(5). As such, the evidence in the record supports the guardianship order. III. Disposition ¶ 15 The order appointing a guardian for Colburn is affirmed. JUDGE HARRIS and JUDGE LUM concur.